OPINION OF THE COURT
 

 Memorandum.
 

 The judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and the Court of Claims judgment dismissing the claim reinstated.
 

 In this action for damages for wrongful death of claimant’s intestate due to the alleged malpractice of a physician employed by defendant (the State), the dispute centers on whether the physician’s misdiagnosis was a matter of professional judgment within the range of accepted medical standards, for which the State cannot be held liable, or malpractice. After trial on the issue of liability, the Court of Claims found that the misdiagnosis resulted from an error in professional judgment and dismissed the claim. The Appellate Division unanimously reversed, concluding that the determination was against the credible weight of the evidence, which in its view demonstrated that the physician did not conduct a careful examination and investigation of decedent’s condition, and judgment was awarded for claimant.
 

 Where the Appellate Division reverses the findings of fact made by the trial court and makes new findings, our role is to determine which court’s findings are in accord with the weight of the evidence (see, CPLR 5501 [b];
 
 Weiss v Karch,
 
 62 NY2d 849, 850). We conclude that the findings of the trial court more nearly comport with the weight of the evidence.
 

 The State physician, after a complete physical examination, concluded that decedent had "acute gastroenteritis”; the autopsy, however, established that decedent’s death, hours after the examination, resulted from salicylate poisoning. Claimant’s medical expert testified that the State physician had departed from accepted standards of medical practice in failing to make a differential diagnosis, and in failing to promptly investigate the cause of decedent’s problems and treat them. In large part the issue centered on the significance of certain symptoms, including a large amount of acetone in decedent’s urine. The State physician testified that he ascribed the high acetone level to decedent’s fasting or a failure to absorb food; claimant, urging that good medical practice required an immediate response to the
 
 *638
 
 acetone, pointed out that the assumption that decedent had been fasting was mere speculation, and in any event would not have accounted for the high acetone level.
 

 We agree with the trial court that the conflicting testimony concerning the significance of certain symptoms does not establish a basis for liability here, particularly in light of the evidence that the State physician competently examined decedent, that there was no information from the patient or record of aspirin ingestion, that decedent’s symptoms did not specifically point to salicylate poisoning or the need to order tests on an emergency basis, and that symptoms often associated with salicylate poisoning were not present. While the Appellate Division placed great reliance on the opinions expressed by claimant’s medical expert, we note the observation of the trial court — having heard his testimony — that his lack of information and memory in certain instances was "of some concern to the Court in reviewing the totality of his testimony,” and we further note that while the State physician, in explaining the high acetone level, may have had no basis for his remarks about fasting, his diagnosis rested additionally on decedent’s other symptoms.
 

 Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye, Alexander and Titone concur in memorandum.
 

 Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.